GEORGE A. YUHAS (SBN 78678)
DAVID T. ALEXANDER (SBN 49996)
LISA MARIE SCHULL (SBN 411378)
Orrick, Herrington & Sutcliffe LLP
Old Federal Reserve Bank Building
400 Sansome Street
San Francisco, California 94111-3143
Telephone:   415-392-1122
Facsimile:    415-773-5759

JOHN R GRELE (SBN 167080)
116 New Montgomery Street, Suite 210
San Francisco, California 94105
Telephone:   (415) 348-9300
Facsimile:    (415) 348-0364

Attorneys for Plaintiff Kevin Cooper

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KEVIN COOPER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>RICHARD A. RIMMER, Acting Director of the California Department of Corrections; JEANNE WOODFORD, Warden, San Quentin State Prison, San Quentin, California,<br><br>　　　　　Defendants. | Case No. C 04-0436 JF (PR)<br><br>**PLAINTIFF'S AMENDED REPLY MEMORANDUM IN SUPPORT OF TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION**<br><br>**CAPITAL CASE**<br><br>Date:  February 5, 2004<br>Time: 4:00 p.m.<br>Place: Courtroom 3, 5th Floor<br>Judge: The Honorable Jeremy Fogel |

**EXECUTION IMMINENT**
**Execution Date February 10, 2004**

**EXPEDITED REVIEW REQUESTED**

## I. **INTRODUCTION**

In five days Kevin Cooper is scheduled to die by a lethal injection procedure that violates his constitutional right to be free from cruel and unusual punishment. It cannot be disputed that the threatened harm to Mr. Cooper if an injunction is not issued overwhelmingly outweighs the harm, if any, that an injunction may cause to the State. The State does not seriously contest this fact. If lethal injection as currently used in California does not violate the California or federal constitutions, the State will get its man if other courts do not intervene for other reasons. Defendants argue that the Court must take into account their "strong interest in proceeding with its judgment." The State's interest in enjoying finality now, however, must yield to a situation in which an individual's fundamental liberties are at stake and the consequence of proceeding absent an injunction would be his death, a final irreversible result.

Under the law of the Ninth Circuit, Mr. Cooper has properly brought this case under 42 U.S.C. Section 1983. He has shown that there are serious questions going to the merits of the claim. The competing opinions of the experts aptly demonstrate this fact. With serious questions surrounding lethal injection developing across the country, and the specific provisions of California's procedure in doubt in this case, Mr. Cooper asks that this Court grant his request for a temporary restraining order and schedule an order to show cause allowing him to present the evidence in support of his claim.

Rather than address the serious issues raised by the complaint and the motion for injunctive relief, the State principally relies on *Gomez v. United States District Court for the Northern District of California*, 503 U.S. 653 (1992), a case which is inapposite to the situation presented here. Indeed, neither the Supreme Court nor the Ninth Circuit subsequently has ever applied the holding in that unique case to bar the issuance of injunctive relief in a case properly brought pursuant to 42 U.S.C. Section 1983.

## II. **MR. COOPER READILY SATISFIES THE REQUIREMENTS FOR A TEMPORARY RESTRAINING ORDER**

The State does not challenge the legal standard governing this motion. The

1 Ninth Circuit has consistently held that a party seeking injunctive relief pursuant to Federal Rule of Civil Procedure 65 and the exercise of the Court's general equitable powers need satisfy only one of two alternative standards. *Brown v. California Dept. of Transp.*, 321 F.3d 1217, 1221 (9th Cir. 2003). There, the Court explained:

> To obtain a preliminary injunction, [plaintiff] must demonstrate either '(1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in [their] favor.' *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

*Id.* "These two alternatives represent 'extremes of a single continuum,' rather than two separate tests." *Sun Microsystems, Inc. v. Microsoft Corp.* 188 F.3d 1115, 1119 (9th Cir. 1999) (citations omitted). The determination is based on "a sliding scale." *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). "If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *Gilder v. PGA Tour, Inc.,* 936 F.2d 417, 422 (9th Cir. 1991). In fact, "[the Ninth Circuit] ha[s] stated that 'an alleged constitutional infringement will often alone constitute irreparable harm.'" *Associated General Contractors of California, Inc. v. Coalition for Economic Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991) citing *Goldie's Bookstore v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984).

The alternative test that to obtain a temporary restraining order, a party must show a likelihood of success on the merits and the he possibility of irreparable injury, has been found by courts more appropriate to an application for a preliminary injunction than a temporary restraining order. *See, e.g., Fierro v. Gomez*, 790 F. Supp. 966 (N.D. Cal. 1992). This is because the element of showing the likelihood of success on the merits implies discovery and a fuller hearing than for a temporary restraining order. The element of probability of irreparable harm in this case is easily met. Execution by a means determined to be cruel suffers injury that can never be repaired.

### III. BY BRINGING HIS SECTION 1983 CLAIM AT THIS TIME, MR. COOPER HAS NOT ENGAGED IN ABUSIVE DELAY OR MANIPULATED THE JUDICIAL PROCESS

Defendants rely on *Gomez,* 503 U.S. 653, to support their argument that plaintiff's complaint is untimely. The *per curium* opinion in *Gomez* is a mere three paragraphs long. The third paragraph simply contains the statement that the stay of execution was vacated. The Supreme Court concluded that the plaintiff made no convincing showing of cause for his failure to challenge the execution of lethal gas in prior habeas petitions, without holding that such a presentation was required. The court cited "abusive delay," which was compounded by the inmate's last minute attempts to "manipulate the judicial process." Given the scant nature of the opinion, it is not possible to discern what manipulation of the judicial process occurred in *Gomez* that justified the Court's refusal to issue an equitable remedy, although Mr. Harris' five last minute stays of execution are likely one reason.

In this case, there is no manipulation of the judicial process. Defendants do not contend differently and, more importantly, have provided no evidence to support such manipulation. Nor does this case involve abusive delay. The only support defendants offer for delay is plaintiff's counsel Mr. Amidon's letter on October 23, 2003, just over three months ago, asking for information from the State regarding the lethal injection protocol. Mr. Amidon requested this information in anticipation of filing a lethal injection challenge. Significantly, defendants do not offer any evidence that the State ever responded to this request. Indeed, to date, the State has still not provided the complete and unredacted procedures contained in Procedure No. 770 that detail the lethal injection process. Furthermore, the State had waited several years before seeking an execution date and there was no indication from it that it was going to seek one then.

This case is unique and also quite different from *Gomez* in that the delay here from October 2003 was not of plaintiff's making. This complaint challenging the lethal injection process was made by plaintiff's new counsel following the setting of the execution date with no delay. In late October 2003, David T. Alexander, counsel for

plaintiff, was contacted by representatives from the Northern California Innocence Project and the California Appellate Project to represent Mr. Cooper. After initial investigation, Mr. Alexander concluded that there was strong evidence that Mr. Cooper is actually innocent and that serious errors and omissions by his appointed post-conviction counsel had resulted in much of this evidence never being presented to any court. This included the fact that, although appointed counsel had mentioned a challenge to lethal injection, there was no indication he had actually done any work towards that end, and was advocating that some agency or organization should bring such a lawsuit as a class action, thereby alleviating him of the responsibility to represent his client fully. The official record in the case, including pretrial, trial and post-conviction proceedings covering a period of almost 20 years, combined with additional case materials, is enormous. Mr. Cooper had become justifiably dissatisfied with his appointed counsel based on the failures to provide sufficient representation as well as a lack of trust resulting from counsel's efforts to sell rights to Mr. Cooper's story to the media without his knowledge. (Declaration of David T. Alexander filed herewith ["Alexander Decl."] ¶ 2.)

On December 2, 2003, Mr. Alexander attempted to substitute in as retained *pro bono* counsel for petitioner's appointed counsel in San Diego County Superior Court. Remarkably, the State opposed the substitution. On December 9, 2003, Judge William Kennedy denied Mr. Cooper's request to have retained counsel of his choice represent him, finding that the Superior Court lacked jurisdiction to permit such substitution because the California Supreme Court had *appointed* Mr. Cooper's then counsel for habeas matters. (*Id.* ¶ 3.)

Mr. Alexander and colleagues George Yuhas and Lisa Marie Schull then applied to the California Supreme Court to be substituted in as counsel, and appointed post-conviction counsel sought to withdraw. On December 17, 2003, the Supreme Court allowed retained *pro bono* counsel to associate, but left Mr. Cooper's court-appointed counsel in the case. This created an untenable situation given Mr. Cooper's complete lack of trust in appointed counsel, the complete breakdown in communication, and Mr.

Alexander's, Mr. Yuhas' and Ms. Schull's determination that legitimate claims must be raised on Mr. Cooper's behalf concerning the inadequate representation of appointed counsel. (*Id.* 4.)

On December 22, 2003, the three Orrick lawyers made a second application to the California Supreme Court for a modification of its first order to clarify that Mr. Cooper's retained counsel of choice is lead counsel. The Orrick lawyers attempted to provide the court with a more complete basis of the failures in representation of Mr. Cooper's prior counsel and the basis for the lack of trust, including counsel's effort to sell the movie rights to Mr. Cooper's life, that Mr. Cooper has for his appointed counsel by attempting to file under seal what was clearly attorney client privileged information. The court denied the request and refused to look at the privileged communication under seal. On January 5, 2004, the court denied Mr. Cooper's request for clarification so that his chosen counsel would serve as his lead counsel. Counsel now had to move forward with uncertainties regarding representation issues or the potential consequences of previous appointed lead counsel's actions. And more, valuable time had been lost that should have been spent attending to Mr. Cooper's case. (*Id.* ¶ 5.)

The first order of business for retained counsel was to prepare a petition for clemency on Mr. Cooper's behalf. Appointed counsel not only had not prepared any clemency materials, he left the State on a prepaid vacation and was unavailable. The notice to file the petition was received on December 18, 2003 and required that the petition be filed on January 5, 2004 in the throes of the holidays, when many persons who needed to be contacted and interviewed were unavailable or on vacation and not at their known homes or places of work. Petitioner's counsel obtained a brief extension until January 9, 2004, with the State's opposition due on January 22, 2004 and the reply due on January 26, 2004. (*Id.* ¶ 6.)

At the same time as these petition papers were being prepared, the Orrick attorneys were reviewing the record, interviewing experts in connection with possible writs of habeas corpus and related discovery based upon information not ever heard by

-5-

the jury or considered by a court, and conducting other investigation that should have been completed years earlier. Counsel were greatly hindered by the refusal of appointed counsel to cooperate and provide all the necessary documents and files. Petitioner sought to file a writ and related motions on January 23, 2004 in Superior Court in San Diego to address these failures in counsel and to obtain additional testing of evidence and investigation of facts never heard by the jury or considered on the merits by any court. Two judges of the Superior Court refused to even allow petitioner to file the papers, in direct contradiction of *In re Carpenter*, 9 Cal. 4th 634 (1995), even though, in the instance of certain requested DNA testing, the applicable statute, California Penal Code Section 1405 requires that such a request be first filed in the Superior Court. The writ, with additional claims, is currently pending before the California Supreme Court.

There has been no delay, other than that caused by the District Attorney's Office and the California courts. Unlike *Gomez*, none of the hurdles was of counsel's or Mr. Cooper's own making and should not affect a decision concerning whether Mr. Cooper is entitled to have his constitutional claims heard. Mr. Cooper and his current active retained counsel have acted expeditiously under enormously difficult circumstances that arose solely because of matters out of their control.

Defendants also argue that even if the lethal injection procedures are cruel and unusual, and even if they do not comport with the evolving standards of decency in this State, Mr. Cooper should die because his execution date is just too close. The defendants' argument defies logic. In the absence of abusive delay and manipulation of the judicial process, Mr. Cooper is entitled to the protections of the Eighth Amendment, whether his claim was brought ten years before the execution, ten days before the execution, or ten minutes before the execution. Even if the State has an interest in the finality of its judgments, that does not entitle it to violate an individual's constitutional rights.

The ever-changing landscape of the California death penalty provides an explanation for why it would have been neither prudent nor acceptable for Mr. Cooper to bring his lethal injection claim at an earlier point in the last two decades. Put quite sim-

ply, Mr. Cooper's claim was never ripe. In 1985 when Mr. Cooper was convicted, California used lethal gas as a method execution. It was not until 1996 when lethal gas was ruled unconstitutional that the default method became lethal injection. Mr. Cooper was continually advised by his counsel that the prior execution dates were not realistic ones due to pending challenges.

The language of Procedure No. 770 provides for an annual review of the procedures by the Chief Deputy Warden. (Declaration of John R Grele filed in support of opening brief, Ex. A). According to such language, Procedure No. 770 could have been, and most certainly was, as recently as June 2003, modified. Until a firm execution date was set on December 17, 2003, Mr. Cooper had no way of knowing to which lethal injection procedure he would be subject. He had no way of knowing which chemicals would be used on him, or whether in fact the procedures to be used were in line with community standards of decency. Before the setting of this date, Mr. Cooper could not have brought a claim with respect to lethal injection procedures that would actually apply to him, absent Court intervention.

### IV. NINTH CIRCUIT LAW HOLDS THAT MR. COOPER'S CLAIM IS PROPERLY BROUGHT AS A SECTION 1983 CLAIM

The State also argues that this Court may not hear Mr. Cooper's claims because they do not form the basis of a Section 1983 complaint. Ninth Circuit law is crystal clear on this point: challenges to methods of execution are to be brought under 42 U.S.C. Section 1983. *Fierro v. Gomez*, 77 F.3d 301, 306 (9th Cir. 1996), *opinion vacated on other grounds*, *Gomez v. Fierro*, 519 U.S. 918 (1996) (challenging lethal gas under section 1983); *Bonin v. Calderon*, 77 F. 3d 1155 (1996) (deciding a challenge to the choice of method of execution under Section 1983). Defendants argue, contrary to the law, that Mr. Cooper's claim should instead have been brought as a successive habeas petition, requiring the permission of the Ninth Circuit before filing in this Court. (Opposition at 8-9.) In support of this position, defendants cite law from the Sixth, Eighth, and Eleventh Circuits. We are not in the Sixth, Eighth or Eleventh Circuits – we are in the Ninth Cir-

cuit where the law is clear.

Defendants' citation to cases outside the Ninth Circuit highlights the split among the circuits with respect to this issue. Perhaps in an effort to clarify the procedure for challenging a method of execution, the United State Supreme Court has certified the question of, "[w]hether a complaint brought under 42 U.S.C. § 1983 by a death-sentenced state prisoner, who seeks to stay his execution in order to pursue a challenge to the procedures for carrying out the execution, is properly recharacterized as a habeas corpus petition under 28 U.S.C. § 2254." *Nelson v. Campbell*, 124 U.S. 835, 835 (2003). While defendants note that the plaintiff in *Nelson* suffered from a medical condition requiring a "cut down" procedure, the question of whether this procedure constitutes cruel and unusual punishment was *not* certified. The Supreme Court did not make any distinctions based on the individualized characteristics of the defendant. The only questions at issue were procedural.

Thus, to the extent defendants argue that the Ninth Circuit should follow the law in other circuits by compelling plaintiff to file a challenge to the lethal injection as a successor habeas, Mr. Cooper's case would fall into the Supreme Court's stated purpose for granting *certiorari* – to determine this precise issue – and thus a stay should be granted pending a ruling in *Nelson.*

## V. PLAINTIFF'S CHALLENGE TO PROCEDURE NO. 770

Defendants argue that there is no risk of unnecessary pain in California's lethal injection procedures. To support this position, defendants' expert Dr. Dershwitz provides a litany of statistical information illustrating the effects on an individual injected with 5 mg of sodium pentothal. According to Dr. Dershwitz, there is almost no possibility that such an injection would leave the person conscious and able to feel pain. Plaintiff's expert Dr. Heath does not disagree on this point. He does, however, disagree with the defendants' underlying assumption: that the sodium pentothal intended for the condemned prisoner will actually reach the body.

As described by Dr. Heath in his declaration, Procedure No. 770 fails spe-

cifically to establish the procedures used in the lethal injection process and the qualifications and training of those carrying out the procedures. The risks and uncertainly built into the procedure severely heighten the possibility that the injections will not be carried out correctly, meaning that the sodium pentothal will not enter the body nor properly anesthetize the inmate.

The ad hoc fashion by which Procedure No. 770 was developed emphasizes the risks inherent in the procedure. The defendants confirm in their opposition that in developing the lethal injection procedure, the Warden of San Quentin consulted other wardens across the country and visited Texas to observe lethal injection executions. There is nothing presented to suggest that these procedures were reviewed by medical personnel, or whether they were established in conformity with community standards of decency. Rather, the State relies on the fact that 36 other states currently utilize lethal injection as evidence that the procedure is humane. To make such a blanket assumption ignores the fact that most states patterned their procedures after other states, and there is no guarantee that the initial method for developing lethal injection provided the safeguards necessary to ensure a humane execution, free of unnecessary pain.

There is no evidence that the use of pancuronium bromide was properly scrutinized before adoption. The defense experts argue that pancuronium bromide is necessary because it will prevent witnesses to the execution from seeing seizures that "may be interpreted by lay observers as an indication of pain or discomfort." (Opposition, Ex. C at 6 ¶ 19, Ex. D at 2.) Presumably, those same experts agree with Dr. Heath that it also will prevent those same witnesses from accurately viewing movements that are a result of actual pain and discomfort. If the necessity of pancuronium bromide is for aesthetic purposes to protect the witnesses from seeing something they may find unpleasant or unnerving, then it does not aid in the lethal injection process. All it does is mask the realities of the pain and discomfort the inmate may actually be suffering.

One glaring deficiency in the defendants' expert declarations is the failure to even consider, much less contravene, the actual records from the executions and the

1  anecdotal evidence plaintiff has presented, and the expert conclusions drawn therefrom.
2  Those must be considered as admitted for the purposes of this proceeding. Thus, when
3  Dr. Rosow states that the execution should be completed in four minutes, he is directly
4  contradicted by San Quentin's own records that show a longer time. Obviously, some-
5  thing can go wrong because of the complete lack of proper procedures, and it has. They
6  have no explanation for what happened to Stephen Anderson.

7  Nor do the defendants' experts discuss any of Procedure No. 770's deficien-
8  cies identified by Dr. Heath that greatly increase the risk of such failures, and the inabil-
9  ity to respond appropriately. They do not reach the issue of the modified IV line and its
10 irregular use. Again, those are admitted. All the defendants' experts do is assume the
11 maximum dosage of sodium pentothal is being given immediately and without any com-
12 plications, an assertion that is not even attested to by the Warden.

13 The Warden's description of the qualifications of personnel introducing the
14 IV line is also deficient. It assumes one nurse is as qualified as any other, an assumption
15 that is highly suspect. Further, there is nothing in the protocols or anywhere else that
16 establishes this fact so that Mr. Cooper, the Court and the public can have any confidence
17 this is true and will remain true for his scheduled execution.

18 The different conclusions reached by the parties' respective experts is not
19 suitable for resolution in the context of a temporary restraining order. What the compet-
20 ing declarations do dramatically demonstrate is that there are very serious questions go-
21 ing to the merits. These questions are resolved only after the parties have had an
22 opportunity to conduct discovery of their respective experts and petitioner has discovery
23 regarding what investigations, evaluation analysis, and medical review, was done in con-
24 nection with California's adoption of Procedure 770.

25 **VI.   CONCLUSION**

26 Mr. Cooper's complaint raises a serious challenge to California's lethal in-
27 jection procedure as it is currently carried out under Procedure No. 770. The State's op-
28 position acknowledges that the issue is fraught with factual disputes that should be

-10-

PLAINTIFF'S REPLY IN SUPPORT
OF MOTION FOR TRO
CASE NO. C-04-0436-JF (PR)

resolved by virtue of an evidentiary hearing.  While many challenges to the process have been filed across the country, no federal court has reached the merit of these claims.  That the requirements for a temporary restraining order are clearly satisfied is not subject to dispute.  The apparent abusive delay and manipulation of the judicial process present in defendants' authority is wholly lacking here.

Dated:  February 4, 2004.

Respectfully submitted,

GEORGE A. YUHAS
DAVID T. ALEXANDER
LISA MARIE SCHULL
ORRICK, HERRINGTON & SUTCLIFFE LLP

JOHN R GRELE


By _____s/David T. Alexander_____
         David T. Alexander
Attorneys for Plaintiff Kevin Cooper

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. MR. COOPER READILY SATISFIES THE REQUIREMENTS
    FOR A TEMPORARY RESTRAINING ORDER ......................................................... 1

III. BY BRINGING HIS SECTION 1983 CLAIM AT THIS TIME,
     MR. COOPER HAS NOT ENGAGED IN ABUSIVE DELAY
     OR MANIPULATED THE JUDICIAL PROCESS ...................................................... 2

IV. NINTH CIRCUIT LAW HOLDS THAT MR. COOPER'S
    CLAIM IS PROPERLY BROUGHT AS A SECTION 1983
    CLAIM........................................................................................................................... 7

V. PLAINTIFF'S CHALLENGE TO PROCEDURE NO. 770 .......................................... 8

VI. CONCLUSION .............................................................................................................10

# TABLE OF AUTHORITIES

**Page**

## CASES

*A & M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001) ............................................................................... 2

*Associated General Contractors of
    California, Inc. v. Coalition for
    Economic Equity*,
    950 F.2d 1401 (9th Cir. 1991) ............................................................................... 2

*Bonin v. Calderon*,
    77 F. 3d 1155 (1996) ............................................................................................. 7

*Brown v. California Dept. of Transp.*,
    321 F.3d 1217 (9th Cir. 2003) ............................................................................... 2

*Fierro v. Gomez*, 77 F.3d 301 (9th Cir. 1996),
    opinion vacated on other grounds,
    *Gomez v. Fierro*, 519 U.S. 918 (1996) ................................................................. 7

*Fierro v. Gomez*,
    790 F. Supp. 966 (N.D. Cal. 1992) ....................................................................... 2

*Gilder v. PGA Tour, Inc.*,
    936 F.2d 417 (9th Cir. 1991) ................................................................................. 2

*Goldie's Bookstore v. Superior Court*,
    739 F.2d 466 (9th Cir. 1984) ................................................................................. 2

*Gomez v. United States District Court
    for the Northern District of California*,
    503 U.S. 653 (1992) ..................................................................................1, 2, 3, 6

*In re Carpenter*, 9 Cal. 4th 634 (1995) ..................................................................... 6

*Nelson v. Campbell*, 124 U.S. 835 (2003) ................................................................. 8

*Sun Microsystems, Inc. v. Microsoft Corp.*,
    188 F.3d 1115 (9th Cir. 1999) ............................................................................... 2

## OTHER AUTHORITIES

42 U.S.C. Section 1983 ............................................................................................ 1, 7

California Penal Code Section 1405 ........................................................................... 6

Federal Rule of Civil Procedure 65 ............................................................................ 1

United States Constitution, Eighth Amendment ........................................................ 6

2